UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH ZDANOWICZ and
HEIDI RUBERTONE,

       Plaintiffs,

v.

M&T BANK CORPORATION,

       Defendant.

---

1:22-CV-00989-JLS-MJR

REPORT AND
RECOMMENDATION

## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) by the Honorable John L. Sinatra, Jr. for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. Before the Court is a motion to dismiss Plaintiffs' complaint brought by Defendant M&T Bank Corporation pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8). For the reasons explained below, this Court recommends that the District Court grant the motion to dismiss.

## PROCEDURAL HISTORY

Plaintiffs Joseph Zdanowicz and Heidi Rubertone commenced this action by complaint filed on December 20, 2022. (Dkt. No. 1). The action seeks severance benefits from Defendant M&T Bank Corporation under the "People's Bank Change in Control Employee Severance Plan" (the "Plan") pursuant to the Employee Retirement Income Security Act ("ERISA") Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B). (*Id.*).

On March 7, 2023, Defendant filed the instant motion to dismiss. (Dkt. No. 8). Plaintiffs filed a response in opposition to the motion (Dkt. No. 16), and Defendant filed a

reply (Dkt. No. 17). The Court heard oral argument on the motion on April 20, 2023. At that time, the Court considered the matter submitted for report and recommendation.

## BACKGROUND[1]

Plaintiffs Zdanowicz and Rubertone were employees of M&T Bank,[2] who resigned their employment shortly after the merger of M&T Bank with their previous employer, People's United Bank, National Association ("PUB"), in April 2022. (Dkt. No. 1, ¶¶ 10-11). Based on concerns about their incentive compensation following the merger, both Plaintiffs voluntarily terminated their employment on April 15, 2022 and filed a claim for benefits under the "People's Bank Change in Control Employee Severance Plan". (*Id.*, ¶¶ 10-11, 22-41). Plaintiffs allege that they satisfied the conditions for severance payment under the Plan when they terminated their employment. (*Id.*, ¶¶ 16-19, 39). Plaintiffs believe that they resigned for "Good Reason," as defined by the Plan, because there was a change in control of the company and there would be "a reduction of more than 20% in the value of [their] performance incentive compensation." (*Id.*).

The Plan provided that a "Change in Control" includes the consummation of, *inter alia*, a merger of the company with one or more persons. (*Id.*, ¶ 13). Under the Plan, an employee could terminate his or her own employment for "Good Reason" following a change in control of the company and within 60 days following the occurrence of one or more of the following events: "(a)(i) any reduction in the Employee's base salary; or (ii) change in the method of computation of commission and/or performance incentive

---

[1] The facts in this section are taken from Plaintiffs' complaint (Dkt. No. 1) and are assumed to be true for purposes of this motion.

[2] Defendant notes in its motion to dismiss that Plaintiffs are former employees of M&T Bank which is designated the Plan sponsor under ERISA – rather than Defendant M&T Bank Corporation, which is the parent company of M&T Bank, but is not a sponsor, administrator, or fiduciary of the Plan. (Dkt. No. 9, pg. 4 n. 1).

2

compensation that would, if target goals were met, result in a reduction of more than 20% in the value of the Employee's commission and/or incentive performance compensation." (*Id.*, ¶ 16). If employment was terminated under these conditions, the Plan required the employer to pay, in lieu of any other severance or separation pay, cash severance compensation to the employee in a lump sum equal to $3/52^{nd}$ of the employee's total compensation multiplied by the number of years of employment, and maintain medical and dental coverage for the employee for a period of six months, or until comparable benefits were provided by a new employer. (*Id.*, ¶ 17).

In early 2021, M&T Bank announced that it would be merging with PUB. (*Id.*, ¶ 18). On July 22, 2021, both Plaintiffs received offer letters from M&T to remain employed after the merger. (*Id.*, ¶ 20). The letters stated that "to the extent applicable your target annual cash bonus opportunity will be at least as favorable as your current opportunity." (*Id.*, ¶ 21).

After receiving the offer letters, Plaintiffs made multiple attempts to obtain further assurance from M&T Bank that their performance incentive compensation would not be reduced following the merger. (*Id.*, ¶¶ 22-28, 32-36). Plaintiff Rubertone received a response on an unspecified date from M&T Bank's Human Resources Department which stated that "The M&T Bank plan is fully discretionary and there are no formulaic calculations." (*Id.*, ¶ 27). M&T Bank also stated that the annual M&T bonus for 2022 would remain the same as the PUB target cash bonus for 2021. (*Id.*, ¶ 28). M&T Bank did not state whether the performance incentive structure would be reduced after 2022. (*Id.*).

On March 15, 2022, Plaintiff Rubertone sent an email "requesting specific details for salary and method of computation" of incentive compensation that she would be

entitled to under M&T's performance incentive plan. On March 21, 2022, Rubertone received a response from M&T's Human Resources Department stating, "as articulated in your M&T employment confirmation letter, your target annual cash bonus opportunity (if applicable) will be at least as favorable as your current opportunity." (Id., ¶ 34).

The merger between M&T Bank and PUB was consummated on April 2, 2022. (Id., ¶ 35). On April 7, 2022, Rubertone received a follow-up email from M&T's Human Resources Department stating,

> As previously communicated, your base salary will remain the same and your annual incentive target opportunity will remain at least as favorable as it was immediately prior to the change of control of the company. Your annual incentive target is 15% of your base salary (which is currently $109,411.36). As a result, for the 2022 performance year (payable in 2023), if applicable target goals and personal performance are achieved, you would have the opportunity to earn an annual incentive of at least $16,411.36 based on your current salary and incentive target.

(Id., ¶ 36). Rubertone alleges that the incentive compensation figure provided by M&T in this email was 31.33% lower than the amount she received from PUB for 2021. (Id., ¶ 38).

Both Plaintiffs resigned their employment on April 15, 2022. (Id., ¶ 39). On June 6, 2022, Plaintiffs each filed claims for severance benefits with The People's Bank Change in Control Employee Severance Plan Committee on the basis that they had terminated their employment for "Good Reason" under the Plan. (Id., ¶¶ 39-42). Plaintiffs claimed that they satisfied conditions for payment under the Plan because there was a change in control of the company and "a reduction of more than 20% in the value of [their] incentive performance compensation." (Id., ¶¶ 16-19, 39-42).

The Plan Committee subsequently denied each of Plaintiffs' claims and denied their subsequent appeals. (*Id.*, ¶¶ 42-44). Plaintiffs allege that M&T's denial of their claims for benefits were arbitrary and capricious. (*Id.*, ¶¶ 46, 50). Following those appeals, Plaintiffs filed this complaint pursuant to ERISA Section 502(a)(1)(B), seeking judgment for unpaid severance and health benefits, as well as awards of attorneys' fees. (*Id.*, ¶¶ 45-52).

## DISCUSSION

I.  Motion to Dismiss Standard

In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–

but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, the Court may consider: "(1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice." *Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 453 (W.D.N.Y. 2017). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document and that there exists no material disputed issues of fact regarding the relevance of the document. *See DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

II.  <u>Application</u>

ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought by a participant or beneficiary [...] to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." 28 U.S.C. § 1132(a)(1)(B).

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*

6

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan grants the administrator discretionary authority, a deferential standard of review is appropriate. *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008). Indeed, where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility for benefits or construe the terms of the plan, courts will not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious." *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (citing *Firestone*, 489 U.S. at 115). Under the arbitrary and capricious standard of review, a court may overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.*, 52 F.3d at 442. Accordingly, the court may not upset a reasonable interpretation by the administrator. *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d. Cir. 1995).

The People's Bank Change in Control Employee Severance Plan states that it "shall be administered and interpreted by the Bank's management-level Administrative Committee," and provides the Plan Committee with discretionary authority to determine benefits eligibility and interpret Plan terms. *See* Dkt. No. 10-1, Plan § 6.01.[3] Plaintiffs do not dispute that the terms of the Plan granted discretionary authority to the Plan Committee. Thus, the "arbitrary and capricious" standard of review is applicable.

As stated, a denial of benefits may be overturned as arbitrary and capricious only if the decision is "without reason, unsupported by substantial evidence or erroneous as a

---

[3] The Court has considered the Plan and the appeal denial letters as documents which are both incorporated by reference and integral to Plaintiffs' complaint. The Plan and its terms are referenced and cited throughout the Complaint, as are Plaintiffs' claims and appeals. These documents were attached as exhibits to Defendant's motion to dismiss (*See* Dkt. Nos. 10-1 to 10-6), and Plaintiffs have raised no dispute as to their authenticity or accuracy.

matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). If a plaintiff's complaint does not allege adequately that plan administrators acted without reason or erroneously as a matter of law, dismissal is appropriate. *See Zeuner v. SunTrust Bank Inc.*, 181 F. Supp. 3d 214, 221 (S.D.N.Y. 2016); *see also McCauley*, 551 F.3d at 132 ("Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.").

In *Zeuner v. SunTrust*, plaintiffs argued that they were terminated by their employer bank following a strategic review and decision to reorganize by the parent company, SunTrust. *See* 181 F. Supp. 3d at 217. Plaintiffs then submitted claims for severance benefits under an employee-benefit plan governed by ERISA. Plaintiffs believed that their termination was due to a "Qualifying Termination" event, which covered involuntary separations based on reductions in workforce, job elimination, consolidation, merger, reorganization, or other business-related changes. *Id*. The plan administrator denied plaintiffs' claims for benefits, concluding that plaintiffs were terminated due to an internal change in leadership and poor job performance, which were express exclusions from the definition of "Qualifying Termination." *Id*. The administrator cited "the company's failure to perform and [plaintiff's] role and involvement as a senior leader." *Id*. Plaintiffs alleged that they consistently performed their jobs well and received positive performance evaluations. *Id*. Despite the parties' disagreement on interpretation of the plan's terms, the district court concluded that defendants' interpretation of the terms was, at minimum, reasonable. *Id*., at 220-21. Further, plaintiffs had not provided a credible alternative explanation that would overcome the arbitrary and capricious standard of review. *Id*.

Accordingly, plaintiffs' complaint was dismissed. *See also Sunwoo v. JPMorgan Chase & Co.*, 20-CV-5410, 2021 U.S. Dist. LEXIS 112084, at *37 (S.D.N.Y. June 15, 2021) (granting motion to dismiss plaintiff's claim for benefits under a severance plan because plan administrator's determination was supported by a plain reading of the plan documents); *Buczek v. Bristol-Myers Squibb Co.*, 07-CV-58C, 2008 U.S. Dist. LEXIS 36972, at *16 (W.D.N.Y. May 2, 2008) ("Even if the court were to consider plaintiff's interpretation of the plan language reasonable, under the arbitrary and capricious standard, '[w]here both the plan administrator and a spurned claimant offer rational, though conflicting interpretations of plan provisions, the [administrator's] interpretation must be allowed to control.'") (citation omitted).

Here, Plaintiffs argue that the Plan Committee's administrative decisions denying them severance benefits were arbitrary and capricious because they were not supported by substantial evidence. Plaintiffs submit that the administrative record lacked evidence to support a finding that Plaintiffs' incentive compensation would not be reduced following the merger.

Contrary to Plaintiffs' claims, the Court finds that the Plan Committee provided a reasonable interpretation of the terms of the Plan when it denied Plaintiffs' claims for benefits. "Good Reason" for voluntary resignation was defined as termination by the Employee following a change in control of the company and within 60 days after several qualifying events, including a "change in the method of computation and/or performance incentive compensation that would, if target goals were achieved, result in a reduction of more than 20% in the value of the Employee's commission and/or incentive performance compensation." The denials of benefits were based on the Committee's rational findings

9

that Plaintiffs had not satisfied the Plan's definition of termination for "Good Reason" prior to their resignations. Neither the allegations of Complaint, nor the administrative record, demonstrate that a change in the method of computation of incentive compensation necessary to trigger the "Good Cause" provisions had occurred. Plaintiffs had not suffered a reduction in performance incentive compensation, and, in fact, were given repeated assurances that their incentive compensation would not be reduced at all, let alone by 20%, following the merger with M&T Bank. Thus, the Court cannot say that the decision to deny benefits was arbitrary or capricious.

The Court also cannot say that the Plan Committee's decisions were unsupported by substantial evidence. Although Plaintiffs rely on allegations that M&T Bank's Human Resources Department told Plaintiff Rubertone that M&T's incentive compensation was fully discretionary with no formulaic calculations, the discretionary nature of the M&T bonus structure does not constitute "Good Reason" under the terms of Plan. A change in the method of compensation does not meet the definition of "Good Reason" for termination unless that change results in a reduction of incentive performance compensation by more than 20%, if target goals were reached. That did not occur here. Instead, Plaintiffs allege that they were each given written assurances from M&T Bank that they would be eligible to receive incentive compensation "at least as favorable" as that which they were eligible to receive immediately before the merger. As stated in Plaintiffs' complaint, "M&T did state that the annual M&T bonus for 2022 would remain the same as the PUB target cash bonus for 2021 […]." The Complaint further alleges that, on April 7, 2022, prior to Plaintiffs' resignations on April 15, 2022, Plaintiff Rubertone received an email from M&T confirming in plain language that her base salary would

remain the same and her annual incentive target opportunity would remain "at least as favorable" as it was immediately prior to the change of control. Without evidence of a change in performance incentive compensation that would have resulted in a reduction of more than 20% of the value of Plaintiffs' compensation, the Plan Committee's denial of benefits was reasonable.

Plaintiffs also argue that the bonus compensation they earned in past years at PUB exceeded that which would have been available at M&T. To this point, Plaintiff Rubertone alleges that the M&T Human Resources Department indicated that she would have the opportunity to earn an annual incentive of at least $16,411, a calculation based upon 15% of her current salary and her incentive target. Rubertone alleges that this figure is more than 30% lower than her actual bonus of $23,900 with PUB in 2021. However, that bonus amount was earned based on Rubertone having exceeded her target sales goals by more than 50% in 2021. (*See* Dkt. No. 10-6, pgs. 2, 4). Rubertone has failed to allege that the target incentive compensation for 2022 with M&T would be lower than her target incentive compensation for 2021 with PUB, a fact which is necessary to trigger the "Good Reason" provisions of the Plan. Plaintiff lacks any allegation that there was change to the formula for calculating incentive compensation based on achieving target goals. Further, M&T affirmed that Rubertone was eligible to earn performance incentive compensation of *at least* 15% of her salary. Thus, although not guaranteed by the Plan terms, M&T did not foreclose Plaintiffs' opportunity to earn additional compensation for exceeding target goals.[4]

---

[4] It appears to this Court that Plaintiffs are seeking a guarantee of an exact amount of future performance incentive compensation with M&T Bank. However, such certainty is not the nature of bonuses or incentive

11

Plaintiffs further argue that despite reasonable efforts they could not confirm with PUB or M&T what the parameters of the incentive compensation structure would be in the future, nor were they assured that the annual bonuses at M&T would not be reduced after 2022. Plaintiff Zdanowicz alleges that his independent research, via www.payscale.com, indicated that comparable positions at M&T received substantially lower incentive compensation than he did at PUB. (Dkt. No. 1, ¶¶ 29-30). The Court rejects this argument because Plaintiff's alleged research has no bearing on or relevance to the employment and compensation structure actually offered by M&T.

As to Plaintiffs' concerns that their bonuses would be reduced in subsequent years, Defendant acknowledges that had Plaintiffs remained employed and learned in 2023, or thereafter, that their incentive compensation was more than 20% lower than they previously received, Plaintiffs could have resigned at that time and claimed "Good Reason" under the Plan. However, speculative potential future decreases in benefits have been found not to warrant "good reason" under similar severance plans. *See Zieche v. Burlington Res., Inc.*, 506 Fed. Appx. 320, 326 (5th Cir. 2013) (unpublished) (affirming denial of benefits under severance plan because, although plaintiff had resigned due to potentially decreased benefits, plaintiff had not actually demonstrated changes to the benefits since "any proposed reductions were uncertain at the time [plaintiff] resigned"); *Kreuger v. Surewest Communs., Inc.*, 2:13-CV-02098, 2014 U.S. Dist. LEXIS 127723, at *26-27 (E.D. Cal. Sept. 11, 2014) (finding plaintiff had not resigned for "good reason" under the severance plan because the claims panel had confirmed there would not be

---

compensation, and Plaintiffs were assured only that the target incentive compensation methodology would not be changed following the merger.

12

any reduction in benefits for the next calendar year and plaintiff's "concerns relating to post-2012 compensation were unsupported and premature"); *Andrews v. Realology Corp. Severance Pay Plan for Officers*, 13-CV-8210, 2015 U.S. Dist. LEXIS 20576, at *26-33 (E.D.N.Y. Feb. 20, 2015) (granting motion to dismiss claim for benefits under severance plan where plaintiff was provided assurances that his incentive compensation would remain the same through the end of the calendar year but no statements were made about future compensation decreases). Here, the Plan did not entitle Plaintiffs to a guarantee that their incentive compensation would never be reduced in the future. Instead, the Plan allowed employees to claim "Good Reason" within 60 days following a change in the method of computation for performance incentive compensation that would result in a reduction in compensation.

Accordingly, the Court concludes that Plaintiffs' complaint does not adequately allege that defendants acted without reason or erroneously as a matter of law. The Plan Committee relied upon a rational interpretation of the Plan's provisions in denying plaintiffs' claims. Furthermore, the Court cannot say that the decisions lacked substantial evidence to support them, when Plaintiffs' own factual allegations support a finding that M&T affirmed there would be no reduction in Plaintiffs' opportunity to earn incentive performance compensation. Given the deferential standard of review and the facts alleged by Plaintiffs, there is no basis for the Court to overturn the Committee's denial of benefits based.

Furthermore, even without the deferential standard of review, Plaintiffs have not shown that they were entitled to severance benefits under the terms of the Plan. Neither Plaintiff has alleged facts demonstrating that they satisfied the "Good Reason"

13

requirements which would make them eligible for severance benefits under the Plan. Plaintiffs' allegations instead reflect that their incentive compensation structure, based on target goals, was not reduced at all, let alone by the 20% threshold set forth in the Plan. Although Plaintiffs were concerned that their incentives could be reduced in the future, there is no allegation that Defendant ever stated an intent to reduce their compensation, nor that any event occurred which resulted in a reduction. In fact, Plaintiffs concede that they were each advised they would receive annual cash bonuses from M&T in 2022 that were "at least as favorable" as their current incentive opportunity with PUB.

Lastly, the Court rejects Plaintiffs' claim that M&T's failure to give assurances that it would not reduce Plaintiffs' incentive compensation in the future constitutes anticipatory breach of contract, under which Plaintiffs need not wait to pursue relief. Setting aside the fact that each Plaintiff's sole cause of action is for a violation of ERISA, Plaintiffs' claims of anticipatory breach or repudiation are unavailing. "Anticipatory breach of contract occurs when a party communicates a definite and unequivocal manifestation of intent not to render the promised performance at the contractually agreed upon time." *Koski v. Eyles*, 37 Conn. Supp. 861, 862-63, 440 A.2d 317 (Conn. Superior Ct. 1981); *see Martin v. Kavanewsky*, 157 Conn. 514, 518 (1969) ("A positive statement to the promisee that the promisor will not perform his contract constitutes an anticipatory repudiation which is a total breach of contract.").[5] Here, Plaintiffs have not plausibly alleged that Defendant communicated any "definite and unequivocal" intent not to pay Plaintiffs their target

---

[5] Plaintiffs assert that the Plan is to be interpreted under the laws of Connecticut. *See* Dkt. Nos. 16, pg. 13 n.10; 17, pg. 8 n. 2; 10-1, Plan § 8.02 ("Governing Law. The validity, interpretation, construction and performance of this Plan shall be governed by the law of the United States where applicable and otherwise by the substantive laws of the State of Connecticut."). For purposes of this motion only, Defendant does not contest this assertion.

incentive compensation following the merger of the banks. Nor have Plaintiffs alleged that Defendant communicated an intent not to pay severance benefits under the terms of the Plan. Indeed, the allegations of the complaint demonstrate repeated assurances by Defendant that Plaintiffs would receive incentive compensation "at least as favorable" as their current opportunity.

Thus, based upon the deferential standard of review and the factual allegations made by Plaintiffs, the Court concludes that Plaintiffs' complaint fails to state a claim upon which relief can be granted. Accordingly, the Court recommends that Defendant's motion to dismiss be granted.

## CONCLUSION

For the foregoing reasons, it is recommended that the Court grant the motion to dismiss brought by Defendant. (Dkt. No. 8).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:    March 15, 2024
          Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge